IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LEMENUEL LYDELL DUNGEY JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CULMEN INTERNATIONAL LLC, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 1:21-cv-01027 (RDA/JFA) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court following *pro se* Plaintiff Lemenuel Dungey's ("Plaintiff") filing of a Complaint (Dkt. 1), Defendant Culmen International LLC's ("Defendant") Motion to Dismiss the Complaint (Dkt. 12), Plaintiff's filing of an Amended Complaint (Dkt. 26), and Defendant's Motion to Strike the Amended Complaint (Dkt. 29). The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendant's Memorandum in Support of its Motion to Dismiss (Dkt. 13), Plaintiff's Opposition (Dkt. 25), and Defendant's Reply (Dkt. 27), as well as Plaintiff's Opposition to the Motion to Strike (Dkt. 33), the Court GRANTS the Motion to Dismiss and the Motion to Strike for the reasons that follow.

I. BACKGROUND[1]

Plaintiff alleges employment discrimination by Defendant in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq*. ("ADA") and the Family and Medical

---

[1] For purposes of considering the Motions, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Leave Act ("FMLA").  Plaintiff specifically alleges that Defendant wrongfully terminated his employment, failed to accommodate his disability, and unlawfully retaliated against him.  Dkt. 1 at 4.

During the period in question, Plaintiff appears to have worked for Defendant as a government contractor pursuant to Federal contract HSSA01-17-Q-1813.  *Id.* at 8.  In November of 2019, Plaintiff received treatment at the Inova Psychiatric Assessment Center in Fairfax, VA for his mental health.  *Id.* at 10.  On December 30, 2019, Plaintiff alleges that he received an Employee Request for Reasonable Accommodation from the director of Human Resources, Laura Gosneigh, after Plaintiff notified his employer he would be seeking short-term disability leave for depression and anxiety.  *Id.* at 7, 10.  On January 23, 2020, Plaintiff allegedly confirmed to Ms. Gosneigh over email that he would begin using his short-term disability leave on January 28, 2020.  *Id.* at 7.  Plaintiff maintains that he stopped work after having clearly informed his employer and having received direction from Ms. Gosneigh as to how the short-term disability leave operated.  At some point after notifying his employer that he would elect short-term disability, Plaintiff alleges that he was placed on a performance improvement plan.  *Id.* at 9.

Liberally construing the allegations of the *pro se* Complaint, Plaintiff appears to allege his employer terminated his employment on the basis of his election of short-term disability leave.  *Id.* at 8.  Plaintiff avers that on February 22, 2020, Defendant terminated his secret security clearance, which was approximately three weeks after he allegedly began the mandated leave for short-term disability.  On February 24, 2020, Plaintiff met with a psychiatrist, Dr. Khin Myint, regarding his medication for his mental health treatment.  *Id.*  But Dr. Myint allegedly notified Plaintiff that his short-term disability form should be completed by psychiatrist Dr. Waleed Mushref's office and returned to Plaintiff's employer.  *Id.*  Plaintiff received his official termination letter from

Defendant in March of 2020.[2] *Id.* at 11. Due to the COVID-19 pandemic, Plaintiff alleges his appointment with Dr. Mushref was cancelled and that he "could not afford the doctor visits." *Id.* at 8-9.

According to Plaintiff, due to an alleged miscommunication, Plaintiff discovered that the individual tasked with communicating his short-term disability coverage with him, Demitrus Smith, at Lincoln Financial, emailed the wrong address and called the wrong phone number to confirm Plaintiff's disability coverage. *Id.* at 9. Mr. Smith was subsequently terminated, leaving Plaintiff without an update and under the assumption that his application had been received and approved. *Id.* Instead, due to Mr. Smith's termination, Plaintiff alleges that his disability application remained pending but that he had no inkling of this development. *Id.* at 10.

In addition to his failure to accommodate and unlawful discrimination claims under the ADA, Plaintiff further alleges that Defendant terminated him from his position, in retaliation for seeking disability leave, without the 90 days of unpaid leave he claims he was entitled to per his short-term disability status under the FMLA. *Id.* at 11. Plaintiff seeks $388,584.00 in estimated backwages and $195,000.00 in estimated salary and benefits from the date of his termination to the date of his new employment, $65,000.00 for emotional distress, $40,000.00 in future estimated medical expenses, $40,000.00 in unemployment wages, and $2,989,168.00 in punitive damages. *Id.* at 6.

On September 3, 2020, Plaintiff filed a Charge of Discrimination ("Charge") against Defendant with the Equal Employment Opportunity Commission ("EEOC"), for the period from November 1, 2019 to March 25, 2020, alleging disability discrimination and failure to reasonably

---

[2] Plaintiff's Charge states he was discharged "on or about 25 March 2020." Dkt. 13-1 at 2.

accommodate in violation of the ADA, in addition to race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Dkt. 13-1 at 1-4. The EEOC issued Plaintiff a Dismissal and Right to Sue letter on June 10, 2021. Dkt. 13-2. Plaintiff filed the Complaint before Judge Trenga on September 8, 2021 against Defendant, Daniel V. Berkon, Robert McPeek, and Laura Gosneigh. Dkt. 1. On December 17, 2021, Judge Trenga issued a show cause order as to why Plaintiff had not properly served the named defendants. Dkt. 4. On January 5, 2022, Judge Trenga extended the deadline to effect the required service an additional 45 days. Dkt. 6. On February 25, 2022, summons was issued as to Defendant. Dkt. 9. The case was reassigned to this Court on March 1, 2022. Shortly thereafter, Defendant filed a Motion to Dismiss with *Roseboro* and an accompanying supporting memorandum on March 8, 2022. Dkt. Nos. 12-13. On May 9, 2022, Defendant filed a supplemental brief in support of dismissal. Dkt. 18. On June 22, 2022, Plaintiff filed his Opposition to the Motion to Dismiss. Dkt. 25. That same day, he also filed an Amended Complaint. Dkt. 26. On June 30, 2022, Defendant filed a Reply. Dkt. 27. On July 1, 2022, Plaintiff filed a response to Defendant's Reply. Dkt. 28. On July 7, 2022, Defendant filed a Motion to Strike Plaintiff's Amended Complaint. Dkt. 29. On July 29, 2022, Plaintiff filed an Opposition to Defendant's Motion to Strike. Dkt. 33.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [his] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va.), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III.  ANALYSIS

Before considering the merits of Plaintiff's allegations, this Court begins its analysis by determining whether Plaintiff may be permitted to file his Amended Complaint.

A. Motion to Strike

This Court finds that Plaintiff has not sought leave to amend his Complaint as required by Federal Rule of Civil Procedure 15(a), as the time to amend without court permission had long passed when the Amended Complaint was filed. Because this Court had already issued a Rule 16 scheduling order at the time Plaintiff filed the Amended Complaint, Plaintiff must satisfy the heightened good cause standard to show why leave to amend should be given. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 297 (4th Cir. 2008). For one, Plaintiff never sought leave to amend and instead sidestepped this Court's rules by directly filing the Amended Complaint. More problematic, Plaintiff's opposition to the Motion represents that Magistrate Judge Anderson requested that he itemize all damages "in the complaint." Dkt. 33 at 3. This was not a true and accurate representation of Judge Anderson's comments. Whether a misunderstanding or a stark misrepresentation, Plaintiff has not demonstrated good cause for this Court to grant leave to file the Amended Complaint.

Upon inspection of the Motion, Defendant has failed to comply with the requirements of this Court's local civil rules, which require that that all motions filed against *pro se* parties "attach to or include at the foot of the motion a warning consistent with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)." E.D. Va. Local Civ. R. 7(K). While this failure would normally deem the Motion withdrawn, this Court recognizes that Plaintiff filed an opposition to the Motion—effectively achieving the purpose of a *Roseboro* notice. As such, the Motion will not be deemed withdrawn and the Court will grant the Motion with the caveat that defense counsel pay careful attention to this Court's local rules in all future filings before this Court.

B.  Motion to Dismiss

This Court now turns to Defendant's Motion to Dismiss Plaintiff's original Complaint. Plaintiff includes a substantial amount of new factual material in his Opposition brief.  This Court does not consider that new material because "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor*, 263 F. Supp. 3d at 618 (citing *Goldfarb*, 791 F.3d at 508).  Furthermore, Plaintiff filed his Opposition nearly three months after the filing of Defendant's Motion to Dismiss, without leave of court.  While "[t]he failure to respond to [a] Motion [to dismiss]" within the 21-day period allotted to a *pro se* plaintiff "is tantamount to a waiver of any opposition on the merits," *Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, No. ELH-11-620, 2011 WL 5547997, at *3 (D. Md. Nov. 10, 2011), and thus "a concession to the relief requested in the pending [m]otion," *Unum Life Ins. Co. of Am. v. Brookshire*, No. 4:15-cv-01226, 2015 WL 13229264, at *2 (D.S.C. Dec. 30, 2015), this Court will consider the merits of the Motion to Dismiss in the interest of justice.

Because Plaintiff appears to have adequately exhausted his claims before the EEOC, this Court evaluates the merits of his claims in the original and operative Complaint.[3]

1.  Racial Discrimination Claim

For the first time before this Court, Defendant specifically raises a racial discrimination claim under Title VII, which although raised in his EEOC Charge, was not addressed in his Complaint. *Compare, e.g.*, Dkt. 13-1 at 1-2 *with* Dkt. 1 at 4 (not selecting "race" as a basis for his claims); *id.* at 9 (generally asserting the conclusory observation that "[a]ll adverse actions that [Plaintiff] experienced [were] due to his disability, race, and/or out of retaliation" but providing

---

[3] Unlike for claims brought under Title VII, "[t]here is no administrative exhaustion prerequisite for FMLA lawsuits." *Johnson v. Lear Corp.*, No. 4:21-cv-455, 2021 WL 4557467, at *3 (N.D. Tex. Sept. 17, 2021).

7

no further discussion of how Defendant racially discriminated against him).  A failure to raise a claim before a district court that had been raised before the EEOC generally does not obligate the district court to review that claim.  *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019) (if the EEOC charge "alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex," that claim "will generally be barred").  Consequently, Plaintiff's Complaint has not "allege[d] facts sufficient to state all the elements of [his] [racial discrimination] claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

But even if this Court were to consider the claims raised in Plaintiff's Charge related to racial discrimination, the Charge falls short of making a plausible racial discrimination claim.  The sole potentially race-related allegation in the Charge turns on one colleague filing a complaint about Plaintiff's professionalism because he allegedly did not like Plaintiff's hair. Dkt. 13-1 at 1.  But the Charge goes no further in allowing this Court to draw a plausible allegation that the dislike of Plaintiff's hair was indeed racially motivated.  *See, e.g.*, *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 530 (D. Md 2015), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016) (holding that plaintiff's status as only African American in her group "does not permit a plausible inference that the unwelcome conduct was *based on* her race.").

This Court therefore limits its review to those claims specifically addressed in Plaintiff's Complaint but will permit Plaintiff to seek leave to file an amended complaint that adequately addresses this claim within the time period allotted in this Court's order.

8

2.  ADA Failure to Accommodate Claim

Plaintiff appears to assert an ADA claim that Defendant failed to provide him a reasonable accommodation upon his request. Defendant argues that he has not alleged he was capable of performing the essential functions of his job with a reasonable accommodation and that Plaintiff never alleges that his employer refused an accommodation.

To state a claim under the ADA for a failure to accommodate, a plaintiff must allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position [sought or held]; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

To demonstrate a disability, a plaintiff must plead facts that demonstrate the disability substantially limits a major life activity under the expanded definition of disability codified in the ADA Amendments Act of 2008 ("ADAAA"). *Summers v. Altarum Inst., Inc.*, 740 F.3d 325, 329 (4th Cir. 2014) (citing 42 U.S.C. § 12102(4)(A) as part of the Court's traditional ADA analysis). A favorable reading of the Complaint suggests that Plaintiff's anxiety and depression constitute a "disability" for purposes of his ADA claim. He has plausibly demonstrated that he received medical treatment from a psychiatrist thereby establishing "a record of" a "mental impairment." *Compare* Dkt. 1 at 10 *with* 42 U.S.C. § 12102(1)(A)-(B); *see also id.* § 12102(4) ("The definition of disability in this chapter shall be construed in favor of a broad coverage of individuals[.]"). And while Plaintiff has not pleaded how his anxiety and depression "substantially limit[] a major life activity," the Department of Labor's guidance confirms that "major depressive disorder"

9

"substantially limit[s] brain function" and thus qualifies as a substantial limitation to a major life activity. 29 C.F.R. § 1630.2(j)(3)(iii).

Under the ADA, to meet the criteria of a "qualified individual" with a disability and receive the protection of the statute, a plaintiff must also show he has a disability and is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Smith v. CSRA*, 12 F.4th 396, 412 (4th Cir. 2021) (quoting 42 U.S.C. § 12111(8)). Plaintiff's allegations, or lack thereof, do not reveal his inability to perform the essential functions of his job with his disability and further do not "show he could perform the essential functions of his position with a reasonable accommodation." *Wilson*, 717 F.3d at 339.

And problematically, Plaintiff still has not pleaded any specific detail surrounding (1) the nature of the accommodation he requested[4] and (2) whether Defendant rejected that accommodation. On the contrary, Plaintiff pleads that "an accommodation had already been put into place" prior to the verification process for Plaintiff's short-term disability request and prior to his official termination. Dkt. 1 at 9-10. This allegation alone fails the fourth element required for Plaintiff's ADA accommodation claim to survive dismissal. *See Wilson*, 717 F.3d at 345.

This Court will not permit Plaintiff's ADA accommodation claim to proceed at this stage as Plaintiff must specifically identify the accommodation requested and detail how the employer responded to the accommodation.

---

[4] This Court is aware that Plaintiff appears to note in his Opposition brief that his accommodation request at least partially entailed an increased telework opportunity. But as this Court has already made clear, this Court cannot consider these newly asserted facts with the Motion to Dismiss.

3. ADA Disability Discrimination Claim

Plaintiff also alleges Defendant unlawfully discriminated against him and terminated him because of his disability in violation of the ADA. In response, Defendant seeks to dismiss the claim because Plaintiff's allegations do not make out a plausible finding as to the third and fourth elements of an ADA discrimination claim: (1) Plaintiff has not alleged he was meeting the legitimate performance expectations of his employer at the time of his termination, and (2) Plaintiff's allegations do not provide a reasonable inference of unlawful discrimination because Plaintiff had not completed his short term disability leave application at the time of his termination. Dkt. 13 at 5.

To state a claim under the ADA for unlawful discrimination, Plaintiff must allege facts sufficient to show that (1) he was a qualified individual with a disability; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate expectations at the time of the adverse employment action; and (4) the circumstances of the adverse employment action raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).[5]

This Court begins by acknowledging that Plaintiff's termination qualifies as an adverse employment outcome. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Holland*, 487 F.3d at 218; *see also E.E.O.C. v. Stowe-Pharr Mills Inc.*, 216 F.3d 373, 377 (4th Cir.

---

[5] For a discrimination claim, "it has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' under the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to withstand a motion to dismiss." *Holloway v. Maryland*, 32 F.4th 293, 298-300 (4th Cir. 2022) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

11

2000) (noting a plaintiff may show termination "or other adverse employment action" to support a discrimination claim).

But as previously addressed, this Court questions whether Plaintiff's allegations demonstrate he was a qualified individual for purposes of the ADA. Plaintiff's failure to indicate whether he was able to perform the essential functions of his position "with or without reasonable accommodation," frustrates this Court's ability to concretely determine Plaintiff was a qualified individual for the position he held. *See* 42 U.S.C. § 12111(8). This determination is intertwined with investigating whether he was in fact meeting his employer's legitimate expectations at the time of his termination. The Complaint solely describes how his performance was questioned in the lead-up to his eventual termination. *See* Dkt. 1 at 10. Plaintiff sprinkles no crumbs for this Court to find that he was able to perform the essential functions of his job or that he was meeting his employer's legitimate performance expectations at the time of his termination.

Lastly, as to the fourth element, close temporal proximity between disability disclosure and the adverse action draws a reasonable inference of discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001); *Flynn v. Mid-Atl. Mar. Acad.*, No. 2:18-cv-502, 2019 WL 7859409 at *8 (E.D. Va. July 30, 2019); *Williamson v. Bon Secours Richmond Health Sys., Inc*, 34 F. Supp. 3d 607, 615 (E.D. Va. 2014). Here, Plaintiff alleges that he was terminated in March of 2020 after having first allegedly "called Ms. Gosneigh to further discuss his disability, and documentation procedures" on December 6, 2020. Dkt. 1 at 10. On December 30, 2020, Plaintiff allegedly requested "documentation and information from Ms. Gosneigh so that he may go on [s]hort-term disability." *Id*. He then confirmed to the HR department his intent to begin using his short-term disability leave on January 23, 2020. *Id.* at 7, 11. Given Plaintiff alleges in his Charge

12

that he was discharged on March 25, 2020, by the time he was terminated, nearly three months had elapsed since he first notified his employer of his disability.

While the Fourth Circuit has held that ten weeks between the time of requesting an accommodation and the adverse action does not automatically preclude an inference of discrimination, without an intervening series of events leading up to the adverse action or a natural evaluation date for termination; a ten-week gap likely will not establish the requisite causation. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (two months and two weeks "is sufficiently long so as to weaken significantly the inference of causation between two events" except in a case where a school employee's performance review was naturally set months ahead to correlate with the end of the academic school year); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (three months between the protected activity and adverse action does not support causation).  Over three months elapsed between Plaintiff's disability disclosure and his termination, effectively foreclosing his ADA discrimination claim.  On this ground, Plaintiff's allegations fail to state a facially plausible ADA discrimination claim and therefore merit dismissal with prejudice as amendment would be futile.

### 4.  FMLA Retaliation Claim

While Plaintiff argues that Defendant retaliated against him after he sought short-term disability leave by terminating his employment and failing to pay him for his disability under the FMLA, Defendant counters that it never received official notice of the request.

A *prima facie* FMLA retaliation claim may survive a motion to dismiss if the plaintiff first plausibly alleges "(1) that he engaged in protected activity, (2) that the employer took adverse action against him, and (3) that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998); *see also*

*King v. Inova Health Care Servs.*, No. 1:19-cv-31, 2020 WL 2108728, at *11 (E.D. Va. May 1, 2020).

The Complaint indeed admits that Plaintiff neglected to confirm the status of his short-term disability leave application with his benefits provider or his treating physicians. Rather, Plaintiff presumed that his initial inquiry in December of 2020 as to the process for electing short-term disability leave, and his email to an HR representative of his employer, would suffice to initiate his FMLA-protected leave. But the Complaint admits that Plaintiff never submitted the short-term disability request form to be completed by the treating physician. *See* Dkt. 1 at 8-9. The Complaint further concedes that the request remained pending with Lincoln Financial. *Id.* at 10. Without having formally submitted the requisite FMLA forms to his employer, Plaintiff cannot receive the protections afforded to those who have followed proper FMLA protocol. *See, e.g.*, *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 764 (7th Cir. 2008) (rejecting an FMLA claim when the plaintiff had received the FMLA forms she needed to submit a formal request but nevertheless failed to submit those forms); *Bailey v. Sw. Gas Co.*, 275 F.3d 1181, 1186 (9th Cir. 2002) (same). Plaintiff does not enjoy the right to functionally amend the right of the employer to require "a certification issued by the health care provider of the eligible employee" Congress wrote into the statute. 29 U.S.C. § 2613(a); *see also Buckmaster v. Nat'l R.R. Passenger Corp.*, No. RDB-19-3203, 2022 WL 1081947, at *13 (D. Md. Apr. 11, 2022) (denying plaintiff's FMLA retaliation claim "in light of his failure to timely provide the requested medical certification" form to be provided by his health care provider).

Because Plaintiff's allegations do not establish that he had submitted a short-term disability form to his employer, even a liberal reading of Plaintiff's Complaint cannot plausibly establish a *prima facie* case that Defendant terminated Plaintiff as a direct result of Plaintiff having sought

14

short term disability. The allegations do not provide a plausible basis to believe Plaintiff's employer was aware that he had actually made a short-term disability request. This claim also will be dismissed with prejudice as amendment would be futile.

### C.  Remaining Named Defendants

Plaintiff has failed to comply with Federal Rule of Procedure 4(m) in properly serving the summons and Complaint on the remaining named defendants in this matter. Indeed, no such service has been effected at all despite Judge Trenga having provided Plaintiff a 45-day extension to properly serve these defendants. *See* Dkt. 6. As a result, these defendants—Daniel V. Berkon, Robert McPeek, and Laura Gosneigh—will be dismissed from this matter without prejudice.

### IV. CONCLUSION

It is hereby ORDERED that the Motion to Strike (Dkt. 29) is GRANTED and the Amended Complaint (Dkt. 26) is STRICKEN from the docket; and it is

FURTHER ORDERED that the Motion to Dismiss (Dkt. 12) is GRANTED and that Plaintiff's Title VII racial discrimination claim and ADA accommodation claim as to Defendant Culmen International are DISMISSED without prejudice while Plaintiff's ADA discrimination and FMLA retaliation claims against Defendant Culmen International are DISMISSED with prejudice; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED without prejudice as to individually named defendants Daniel V. Berkon, Robert McPeek, and Laura Gosneigh; and it is

FURTHER ORDERED that if Plaintiff seeks to amend the Complaint (Dkt. 1) with respect to the claims that have been dismissed without prejudice, Plaintiff must file a Motion to Amend, with an attached proposed Amended Complaint providing a chronological, plain statement of the

facts in compliance with Federal Rule of Civil Procedure 8, within 21 days of the entry of this Memorandum Opinion and Order; and it is

FURTHER ORDERED that the final pretrial conference scheduled before this Court on October 20, 2022 is VACATED but will be rescheduled upon the completed briefing of any Amended Complaint Plaintiff files within the time permitted by this Court; otherwise, the case will be closed.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward a copy of this Order to Plaintiff's mailing address and to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
September 20, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge